**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 07-cv-01490-REB

LILLIAN R. DANIEL,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

**ORDER REVERSING DISABILITY DECISION
AND DIRECTING AWARD OF BENEFITS**

**Blackburn, J.**

    The matter before me is plaintiff's Complaint [#1], filed July 16, 2007, seeking review of the Commissioner's decision denying plaintiff's claim for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I reverse the decision and direct an award of benefits in plaintiff's favor.

## I. FACTUAL AND PROCEDURAL BACKGROUND

    Plaintiff alleges that she is disabled as a result of a variety of impairments, including obesity, chronic obstructive pulmonary disease, hypertension, gastroesophageal reflux disease, schizoaffective disorder, paranoid schizophrenia, and borderline personality disorder. After her application for supplemental security income benefits was denied initially, plaintiff requested a hearing before an administrative law

judge.  A hearing was held on September 11, 2006.  At the time of this hearing, plaintiff was 41 years old.  She has a high school equivalency diploma and no relevant past work experience.  Plaintiff has not engaged in substantial gainful activity since her alleged date of onset, May 1, 1999.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability insurance and supplemental security income benefits.  Although the medical evidence established that plaintiff suffered from severe impairments, the judge concluded that the severity of such impairments did not meet or equal any impairment listed in the social security regulations.  The ALJ found that plaintiff had the residual functional capacity to perform a limited range of sedentary work and that there were jobs existing in significant numbers in the national economy that she could perform.  The ALJ therefore found plaintiff not disabled at step five of the sequential evaluation.  Plaintiff appealed this decision to the Appeals Council.  The Council affirmed.  Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments, the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination."  **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of

a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. **See Kelley v. Chater,** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

> 1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.
>
> 2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.
>
> 3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.
>
> 4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.
>
> 5. If the claimant does not have the residual functional capacity to perform his past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f). **See also Williams v. Bowen** 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. **Bowen v. Yuckert**, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294

n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. ***Casias v. Secretary of Health & Human Services***, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. ***Brown***, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

### III. LEGAL ANALYSIS

Plaintiff presents four grounds of error in this appeal. I find the first two of these bases interrelated and dispositive, and therefore do not address the remaining

4

arguments.

The social security regulations include a listing of physical and mental impairments that are presumptively disabling.  *See* 20 C.F.R., Pt. 404, Subpt. P, app. 1. Section 12.00 of the listings describes various mental disorders.  Each of the nine diagnostic categories identified therein is defined by three criteria: a statement describing the disorder (the capsule definition), a set of medical findings (the paragraph A criteria), and a set of impairment-related functional limitations (the paragraph B criteria).  Alternative functional criteria (the paragraph C criteria) are included for certain classes of disorders.  A claimant's impairment meets or equals a listed impairment, and therefore is presumed to be disabling, if the diagnostic description of the capsule definition and the criteria of both paragraphs A and B, or A and C, where appropriate, are satisfied.  *Id.*, § 12.00A.

The ALJ analyzed plaintiff's mental impairments under listings 12.04, which describes affective disorders, and 12.08, which covers personality disorders.  Although the ALJ conceded that plaintiff "may have some of the "A" criteria symptoms," he found that "her functional limitations are not of the listing level severity as set forth in the 'B' criteria." (Tr. 21.)  Paragraph B requires proof that a medically determinable impairment has resulted "in at least two of the following:  1.  Marked restriction of activities of daily living; or 2.  Marked difficulties in maintaining social functioning; or 3.  Marked difficulties in maintaining concentration, persistence, or pace; or 4.  Repeated episodes of decompensation, each of extended duration." *See id*, §§ 12.04B & 12.08B.  The ALJ based this latter conclusion on the findings of a reviewing state agency psychiatrist, Dr.

5

Ellen Ryan. (*See* Tr. 22, 138.) He specifically discredited the contrary opinions of both plaintiff's treating doctor, Dr. Amy Metzler, and the consultative examiner, Dr. Maly Sayasane. In so doing, the ALJ erred.

The opinion of a treating source is generally entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(d)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating source opinion is not given controlling weight, it is still entitled to deference "and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927." **Social Security Ruling** 96-2p, 1996 WL 374188 at *4 (SSA July 2, 1996). *See also Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).[1] In either event, a treating source opinion may not be rejected absent good cause for specific, legitimate reasons clearly articulated in the hearing decision. *Watkins*, 350 F.3d at 1301; *Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995); *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987). Similarly, given the nature of the factors that affect the weight to be afforded various medical opinions, the opinion of a consultative examiner, who personally met and

---

[1] These factors include:

1. the physician's length of treatment of the claimant;
2. the physician's frequency of examination;
3. the nature and extent of the treatment relationship;
4. the support of the physician's opinion afforded by the medical evidence of record;
5. the consistency of the opinion with the record as a whole; and
6. the specialization of the treating physician.

20 C.F.R. § 416.927(d)(2).

evaluated the claimant, generally will be entitled to more weight than that of a doctor who merely reviewed medical records.  **Vargas v. Sullivan**, 898 F.2d 293, 295-296 (2nd Cir. 1990); **Bradley v. Bowen**, 809 F.2d 1054, 1057 (5th Cir. 1987).  **See also Social Security Ruling** 96-6p, 1996 WL 374180 at *2 (SSA July 2, 1996) (nothing that the "Administrative Law Judge and the Appeals Council are not bound by the findings made by State agency or other program physicians or psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions").

      Dr. Metzler of Jefferson Center for Mental Health, where plaintiff was seen regularly for treatment, opined that plaintiff suffered from schizoaffective disorder which was "chronic and severe," that she required "close monitoring by her husband to guard against further decompensation," and that her "mental illness has led to significant impairment in social functioning and she is not able to work."  (Tr. 488.)  The ALJ properly rejected the last of these opinions, as it goes to an issue reserved exclusively to the Commissioner.  20 C.F.R. § 416.927(e)(1).  **See also Sosa v. Barnhart**, 2003 WL 21436102 at *5 (D. Kan. April 10, 2003), **adopted**, 2003 WL 21428384 (D. Kan. Jun. 17, 2003).  His reasons for discounting the remainder of Dr. Metzler's opinions, however, do not withstand scrutiny.

      First, the ALJ claimed that "Dr. Metzler's opinions do not seem to be supported by progress notes in Exhibit 20F that indicate improved symptoms and consistent GAF scores of 55."  (Tr. 25.)  The ALJ's failure to cite to any specific portion of the 37-page

7

exhibit makes it difficult to meaningfully review this statement.[2]  *See Bolan v. Barnhart*, 212 F.Supp.2d 1248, 1262 (D. Kan. 2002).  More importantly, the treatment notes do not support the conclusion that plaintiff's symptoms "improved," at least not in a meaningful sense.  Instead, the medical evidence shows that plaintiff's mental condition waxed and waned over time.  For example, on March 8, 2006, plaintiff reported having hoarded medication in contemplation of overdosing, and her husband had taken to locking the medications away and monitoring her when she took them.  (Tr. 473.)  She continued to report suicidal ideation on April 19.  (Tr. 465.)  On May 9, however, plaintiff's husband reported that her mood had stabilized, although he continued to monitor her medications closely.  (Tr. 459.)  Nevertheless, when plaintiff was seen next, on June 5, she was reported to be "tearful [and] upset."  (Tr. 457.)  By July, she again reported hoarding her medications with the intent to commit suicide.  (Tr. 452.)  The Commissioner's regulations explicitly recognize that the level of functioning for a claimant who suffers from mental impairments "may vary considerably over time."  20 C.F.R. Pt. 404, Subpt. P, app. 1, § 12.00D(2).  The ALJ's failure to acknowledge the cyclical pattern of plaintiff's symptoms smacks of "cherry picking" the record, which is improper.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004).  It certainly does not provide good cause for discrediting a treating source opinion.

---

[2] The judge did note that the record showed a consistent GAF score of 55. (Tr. 25.) *See Langley*, 373 F.3d at 1122 n.3 ("The GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'") (quoting **American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders** at 32 (Text Revision 4th ed. 2000)). This observation fails to account for the fact that plaintiff was hospitalized for attempted suicide twice during the same period of time, once with a GAF score of 25 and once with a GAF of 30. (Tr. 253, 231.)

The ALJ further discounted Dr. Metzler's opinions as incongruous with plaintiff's activities of daily living and social functioning. (Tr. 25-26.) The ALJ relied heavily on plaintiff's activities of daily living throughout his opinion, and although such activities can inform the disability decision, they do not always translate well into a determination of what the claimant can do on a sustained basis in the workplace. *See Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993); *see also Draper v. Barnhart*, 425 F.3d 1127, 1131 (8th Cir. 2005). More importantly, when mental impairments are at issue, the Commissioner has specifically recognized that a claimant may still be markedly limited in this area, even if she has a wide range of activities of daily living, if she cannot perform such activities without direct supervision or "on a consistent, useful, routine basis, or without undue interruptions or distractions." 20 C.F.R. Pt. 404, Subpt. P, app. 1, § 12.00C(1). *See also id.*, § 12.00F ("Particularly in cases involving chronic mental disorders, overt symptomatology may be controlled or attenuated by psychological factors such as placement in . . . [highly structured and supportive settings [such as] may . . . be found in your home."). Dr. Metzler's opinion specifically notes that plaintiff "requires close monitoring by her husband to guard against further decompensation" (Tr. 488), and that conclusion is amply supported by the treatment records (Tr. 346, 349, 355, 360, 409, 459, 473). Likewise, the fact that plaintiff is able to socialize with family and friends does not necessarily demonstrate an ability to interact appropriately with co-workers, supervisors, and the public, even on a limited basis. *See* 20 C.F.R. Pt. 404, Subpt. P, app. 1, § 12.00C(2) ("Social functioning refers to your capacity to interact independently, appropriately, effectively, and on a sustained basis with other

9

individuals."). Moreover, the evidence of record shows that plaintiff has "a history of altercations" (Tr. 163, 200), "evictions" (Tr. 103, 195, 251), "firings" (Tr. 103), and "fear of strangers" (Tr. 205, 349, 452, 459), all of which the Commissioner states must be considered in determining the level of impairment of social functioning, *see* 20 C.F.R. Pt. 404, Subpt. P, app. 1, § 12.00C(2). The ALJ's failure to address and resolve these issues further undermines his decision to discount Dr. Metzler's opinion.

The ALJ discredited the opinions of Dr. Sayasane, the consultative examiner, that plaintiff was moderately to significantly impaired in her ability to maintain concentration, persistence, and pace and to interact appropriately because they were "based on a one-time examination" and were allegedly not supported by the medical record, which the ALJ characterized as showing that plaintiff "reports that she is doing better with minimal psychosis." (Tr. 25.) As described more fully above, the latter determination mischaracterizes the longitudinal evidence of record. As for the former, discounting a consultative examiner's opinion because it is based on a one-time examination is both illogical, since such is the inherent nature of a consultative examination, and ironic in this instance, given that the opinion to which the ALJ ultimately afforded the greatest weight was based on no examination at all.[3]

---

[3] In addition, Dr. Ryan's assessment of Dr. Sayasane's opinion is misleading at best. For example, whereas Dr. Sayasane reported that plaintiff became increasingly anxious and distraught as the interview progressed, to the point where "[t]his examiner stopped the interview to assist the claimant with breathing and relaxation in order to calm her anxiety, and proceed with the examination" (Tr. 203), Dr. Ryan reported only that plaintiff was "coherent but anxious" (Tr. 144). Similarly, Dr. Sayasane's observation that plaintiff was "disengaged and presented with a dazed expression" and twice had to be redirected back to the interview and asked to have the previous question repeated (Tr. 203), was translated by Dr. Ryan into a much more benign "needed some redirection" (Tr. 144). Finally, Dr. Ryan's description of "reduced social" (Tr. 144) hardly seems an adequate encapsulation of Dr. Sayasane's conclusion that plaintiff was moderately to significantly impaired in her social functioning and would have difficulty "sustaining adequate performance in a work-related setting" (Tr. 205).

In sum, I find that the ALJ did not articulate good cause specifically tied to the evidence of record for the weight he gave, or failed to give, to Dr. Metzler's and Dr. Sayasane's opinions. At the very least, Dr. Sayasane's opinion supports the conclusion that plaintiff meets the paragraph B criteria of section 12.04. The evidence on which the ALJ relied in finding to the contrary does not provide substantial evidence for the Commissioner's disability decision.

Plaintiff asks the court to forgo remand and direct the Commissioner to award her benefits. I find the circumstances of this case present an appropriate opportunity for the exercise of my discretion in that regard. *See **Nielson v. Sullivan***, 992 F.2d 1118, 1122 (10th Cir. 1993). The ALJ conceded that plaintiff met the criteria of paragraph A. Dr. Sayasane's opinion supports the conclusion that plaintiff meets the severity requirements of at least two of the four paragraph B criteria, as required to find her mental impairment presumptively disabling under section 12.04, and is consistent with the opinion of plaintiff's treating doctors. For the reasons set forth above, Dr. Ryan's contrary opinion does not constitute substantial evidence sufficient to overcome those opinions, nor does the other evidence of record contradict or undermine them. Under these circumstances, a remand would only serve to further delay an award of benefits to which plaintiff clearly is entitled.

**THEREFORE, IT IS ORDERED** as follows:

1. That the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **REVERSED**;

2. That **JUDGMENT SHALL ENTER** in favor of plaintiff and against the Commissioner;

3. That the Commissioner is **DIRECTED** to award plaintiff benefits as of the alleged date of onset of her disability; and

4. That plaintiff is **AWARDED** her costs to be taxed by the Clerk of the Court pursuant to **FED.R.CIV.P**. 54(d)(1) and **D.C.COLO.LCivR** 54.1, and as permitted by 28 U.S.C. § 2412(a)(1).

Dated August 13, 2008, at Denver, Colorado.

                                **BY THE COURT:**

                                **s/ Robert E. Blackburn**
                                **Robert E. Blackburn**
                                **United States District Judge**